# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 20, 2006 Session

## ALENA WHARTON v. ROBERT WHARTON

**A Direct Appeal from the Chancery Court for Crockett County**
**No. 8167    The Honorable George R. Ellis, Chancellor**

**No. W2005-02444-COA-R3-CV - Filed November 29, 2006**

This case arises from post-divorce proceedings concerning custody of the parties' minor child. Mother/Appellant appeals from the order of the trial court granting primary residential custody to Father/Appellee. Specifically, Mother asserts that the trial court erred in disallowing testimony at the hearing. Father also raises an issue concerning whether the trial court erred in not making an award of retroactive child support. Finding no error, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

Mark L. Agee and Jason C. Scott of Trenton, Tennessee for Appellant, Alena Wharton

Sam J. Watridge of Humboldt, Tennessee for Appellee, Robert Wharton

## OPINION

Alena Wharton ("Plaintiff," or "Appellant") and Robert Wharton ("Defendant," or "Appellee") were married on August 4, 1989. The parties were divorced in 2002. At that time, the parties had one minor child living at home, Michael David Wharton, who was then five years old. On April 15, 2002, the parties entered into a Permanent Parenting Plan. In regard to parenting time, the parties agreed as follows:

> Both Father and Mother work at Goodyear at Union City, Tennessee. When the Father is at work the child will be cared for by the Mother. When the Mother is at work the child will be cared for by the Father. When both parents are at work, the child will be cared for by the Father's mother.

Although the child had not begun school at the time of the parenting plan, the parties agreed that the arrangement outlined therein would continue after the child entered school.

On June 23, 2003, Ms. Wharton filed a Petition to Modify Permanent Parenting Plan. In her Petition, Ms. Wharton alleged a material change in circumstance due to the fact that she now lived in Union City, Tennessee with her mother. She further asserted that it would be in the child's best interest for her to be declared the primary residential parent. On July 16, 2003, Mr. Wharton filed an Answer to Ms. Wharton's petition along with a counter-petition. In his counter-petition, Mr. Wharton also alleged a material change in circumstance and sought to have himself declared the primary residential parent. He specifically alleged that Ms. Wharton was "not a suitable person to be designated primary residential parent."

On July 28, 2003, Mr. Wharton filed a Motion for Restraining Order against Ms. Wharton, seeking to restrain her from removing the child from the elementary school in Trimble, Tennessee. Mr. Wharton alleged that Ms. Wharton had plans to enroll the child in the Union City school system. He further alleged that the minor child had spent nights with Ms. Wharton while she was in the company of her paramour. On August 25, 2003, the parties entered into an agreed order wherein Ms. Wharton agreed to keep the child in the Trimble elementary school and wherein the parties agreed to refrain from overnight visitation with paramours while the minor child was present.

On July 30, 2004, Mr. Wharton filed a "Motion to Approve Temporary Parenting Plan," wherein he alleged that Ms. Wharton had moved to Mayfield, Kentucky and that her move had made the existing visitation schedule unfeasible. Mr. Wharton sought residential custody of the child with Ms. Wharton having visitation every other weekend. On September 15, 2004, Mr. Wharton also filed a Petition for Contempt against Ms. Wharton alleging, *inter alia*, that she had failed to pay certain debts and school expenses, which had been ordered by the court. Ms. Wharton filed her own motion for contempt on November 4, 2004, alleging that Mr. Wharton had authorized certain dental procedures for the minor child without consulting with her.

On November 10, 2004, Ms. Wharton filed a response to Mr. Wharton's petition for contempt, in which she denied the material allegation of that petition. On the same day, Ms. Wharton also filed a response to Mr. Wharton's motion to approve the temporary parenting plan, wherein she asserts that "the issues addressed in that parenting plan are the chief issues of the underlying litigation and that this matter is currently set for trial on the merits on December 8th, 2004." Ms. Wharton also filed a second motion for contempt against Mr. Wharton, alleging that he had denied her phone contact with the child and had refused to allow her visitation on the child's birthday, which was in contravention of the most recent parenting plan. On November 10, 2004, Mr. Wharton filed a response to Ms. Wharton's first motion for contempt, denying the allegations therein.

On November 18, 2004, Ms. Wharton moved the court to allow her to amend her petition to show that she was now remarried and living in Mayfield, Kentucky. On November 19, 2004, Ms. Wharton filed her third motion for contempt, alleging that the parties had been before the court on November 10, 2004, at which time the court had granted Mr. Wharton temporary primary

residential custody and had awarded Ms. Wharton "standard shared parenting provisions". The motion for contempt alleged that Mr. Wharton had violated that agreement.

On December 3, 2004, Mr. Wharton filed a Petition for Contempt and for Protective Order alleging that Ms. Wharton had kept the child at Thanksgiving, and had made disparaging remarks about Mr. Wharton in the child's presence. In his motion, Mr. Wharton also alleged that the child had expressed a preference to live with Mr. Wharton. Further, the petition alleged that Ms. Wharton had been acting irrationally and had been sitting in the child's classes "for over two hours frequently." Mr. Wharton also alleged that Ms. Wharton was planning to remove the child from meetings with his counselor, Dr. Steven Bell, because Dr. Bell had allegedly recommended that Mr. Wharton be awarded primary residential custody. Based upon these allegations, Mr. Wharton sought, and received, an *ex parte* Restraining Order, which was issued on December 7, 2004.

On December 28, 2004, Ms. Wharton filed a response to Mr. Wharton's motion for contempt and for protective order, wherein she denied the material allegations contained in the motion. Concerning the restraining order, Ms. Wharton argued that the *ex parte* order was intended to disrupt or deny her visitation during the upcoming Christmas holiday. Ms. Wharton further alleged that, because she had not been afforded notice or an opportunity to respond, the restraining order would expire by operation of law on December 21, 2004 pursuant to Tenn. R. Civ. P. 65.03(5). Ms. Wharton then assumed the role of counter-movant and alleged that Mr. Wharton was in contempt of court for his alleged failure to comply with the visitation schedule.

On January 5, 2005, Ms. Wharton filed a motion asking the court to specify the doctor to conduct the independent custodial family evaluation because the parties could not agree on which doctor to use. On January 24, 2005, Mr. Wharton filed a response to Ms. Wharton's motion, alleging that he did not remember the court announcing that there would be an independent evaluation and further asserting that such an evaluation was unnecessary because the child's current counselor, Dr. Bell, was of the opinion that the child should remain with Mr. Wharton.

On February 7, 2005, the trial court entered its Order on the November 10, 2004 hearing on the motion for temporary custody. This Order designates Mr. Wharton as the temporary primary residential parent, gives Ms. Wharton the standard shared parenting provisions, and orders the parties to submit to family custodial evaluations by an appropriate expert.

On or about February 23, 2005, an agreed order was entered providing that Ms. Wharton would have the standard shared parenting and that the visitation may be reviewed in the event that the parties engage in any prohibited conduct. The parties further agreed not to discuss or to have others discuss with the child his preferences about where he wanted to live. Ms. Wharton agreed not to remove the child from the 28th Judicial District except for visitation. The parties further agreed not to interfere with the child's activities, and agreed to split spring break and alternate the child's activities. All other issues were reserved until a hearing scheduled for May 9, 2005.

On February 28, 2005, Ms. Wharton filed a Motion to Amend Order seeking to amend the February 7, 2005 order relative to Mr. Wharton being able to claim the child on his income tax return. Mr. Wharton responded to this motion on March 17, 2005.

On May 16, 2005, Mr. Wharton filed a "Motion to Suspend or Terminate Visitation Pending Psychological Treatment of the Mother," wherein Mr. Wharton alleged that Ms. Wharton's behavior had become erratic and irrational. Mr. Wharton claimed that Ms. Wharton had driven the child while she was under the influence of prescription medication, had attempted to carry the child away from his ball game and had had Mr. Wharton arrested for assault when he attempted to stop her from removing the child. Mr. Wharton further alleged that Ms. Wharton had no one to care for the child when she worked and had left the child in the car on one occasion while she was at work.

Thereafter, the parties engaged in another round of contempt motions and responses thereto. On May 23, 2005, Ms. Wharton filed a Response to Mr. Wharton's "Motion to Suspend or Terminate Visitation Pending Psychological Treatment of the Mother," wherein she denied the material allegation of that motion.

On July 12, 2005, Mr. Wharton filed a "Motion to Approve Husband's Parenting Plan." On or about July 11, 2005, the court entered an order on several issues regarding visitation and allegations of contempt, but deferred the issue of child support and a permanent parenting plan to the parties for entry of a consent order.

The matter proceeded to hearing on August 9, 2005. The purpose of that hearing was to set child support and to enter a permanent parenting plan (issues that had been deferred in the court's order of July 11, 2005, *see supra*). Following the hearing, on September 7, 2005, the trial court entered an Order requiring Ms. Wharton to pay $407.00 per month effective August 9, 2005. On September 12, 2005, the trial court entered a parenting plan, which was signed by Mr. Wharton's attorney and the Chancellor. Ms. Wharton appeals from this Order and raises two issues for review as stated in her brief:

> I. Whether the trial court committed reversible error when it refused to allow the Appellant to offer any witnesses at trial?
>
> II. Whether the trial court committed reversible error when it based its entire decision on the report of an expert witness where the court did not allow the Plaintiff to call the expert as a witness?

Mr. Wharton raises the additional issue of whether the trial court should have ordered child support effective February 7, 2005 (as opposed to August 9, 2005).

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless

the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R.App. P. 13(d). Furthermore, the trial court is afforded wide discretion in the admission or rejection of evidence, and the trial court's action will be reversed on appeal only when there is a showing of an abuse of discretion. *See Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn.1992); *Davis v. Hall*, 920 S.W.2d 213, 217 (Tenn.Ct.App.1995). The abuse of discretion standard requires us to consider: (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn.Ct.App.2000). While we will set aside a discretionary decision if it does not rest on an adequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

As discussed above, the hearing set for August 9, 2005 was for the purpose of entering a permanent parenting plan and for the setting of child support. Apparently, the parties were to come to some agreement concerning the parenting plan and were to submit a parenting plan to the court for approval on that date. At the hearing, counsel for Ms. Wharton indicated that the parties had not been able to come to terms about the parenting plan and requested that the trial court hear evidence concerning whether Mr. Wharton was the best choice as primary residential parent. Specifically, Ms. Wharton sought to introduce testimony from her counselor, from her children (who were adopted by and lived with Mr. Wharton during the course of the parties' marriage), and wished to cross-examine Dr. Kennon. When the trial court did not wish to hear these witnesses, counsel for Ms. Wharton objected as follows:

> I understand the Court's ruling. I'm not arguing with the Court about that. But for the–as an offer of proof, I would have produced–I don't know that that's an issue. I did have [Ms. Wharton's] counselor here today, but I don't know that we have any issues as to that. I had present the two witnesses, the adopted children of Mr. Wharton, the natural children of [Ms. Wharton], as to concerns that they had and incidents that had occurred when they were in the home with Mr. Wharton that we feel like would raise issues as to the best suitability as a primary residential parent. We would have offered that.

The record does not reflect that the trial court refused to allow an offer of proof. If the quote above purports to be an offer of proof by Ms. Wharton's counsel, it is simply too vague to give this Court any indication of what the testimony of Ms. Wharton's children would entail. In short, we have no basis to determine the nature of the alleged "incidents that had occurred when they were in the home with Mr. Wharton." We cannot say that the trial court abused its discretion concerning this testimony.

Concerning Dr. Kennon, counsel for Ms. Wharton indicated that he wished to examine Dr. Kennon concerning whether the doctor's review of certain of Mr. Wharton's medical records would have resulted in his reaching a different recommendation. The doctor, who had been appointed by the trial court, filed a written recommendation with the trial court that Mr. Wharton be awarded primary residential custody of the minor child. Allegedly counsel for Ms. Wharton had filed a motion to compel discovery seeking to get copies of psychological records on Mr. Wharton. The trial court, however, was unable to locate this motion in the court's records. Nonetheless, we note that, according to the record, Dr. Kennon was in possession of a medical release from Mr. Wharton under which the doctor could have procured these records had he deemed it necessary to review same. In fact, the trial court makes this point when counsel for Ms. Wharton argues that Dr. Kennon should have reviewed the medical records before reaching his conclusion, to wit:

> MR. AGEE [counsel for Ms. Wharton]: I understand that, Chancellor, but there's relevant material that he [Dr. Kennon] hasn't had, and it might not [sic] change his recommendation.
>
> THE COURT: I'll leave that up to him [Dr. Kennon]. I sent them [the parties] to him. He has the call. Whatever he wanted, he should have gotten. And if there's a reason he needs more information, then he'll need to contact the Court, and we'll get that done. That's the reason we got all parties to go and tell him whatever their side is so he can make the decisions. And he's made a decision as the Court requested, and that's going to be followed for today....

In addition, counsel for Ms. Wharton admits that his client had voluntarily submitted to Dr. Kennon's evaluation, to wit:

> MR. AGEE: That was per agreement that we submitted to Dr. Kennon in the first place.

From the record, it appears that Dr. Kennon was in the courtroom during the above arguments. When asked at the end of the hearing whether he objected to the admission of his written recommendation, Dr. Kennon indicated that he did not, to wit:

> THE COURT: Does Dr. Kennon have any objection to that [the admission of his written recommendation]?
>
> MR. AGEE: Dr. Kennon just indicated to me he has no objection.

Dr. Kennon's lack of objection to the entry of his recommendation indicates that he was satisfied with his conclusion that Mr. Wharton should be named primary residential parent. Had he felt a need for further review of medical records (or any other materials), the doctor had an opportunity

at the hearing to report that to the trial court. From all of the above, we cannot conclude that the trial court abused its discretion in not allowing Dr. Kennon to take the stand.

Concerning the child support issue raised by Mr. Wharton. Although the trial court entered an Order on February 7, 2004 granting Mr. Wharton temporary primary residential parent status and granting Ms. Wharton standard visitation, as the trial court correctly points out, there was no temporary parenting plan filed with this Order, to wit:

> MR. WATRIDGE [counsel for Mr. Wharton]: And the other issue is the effective date of the child support. We would like it to go back to the other parenting plan at least.
>
> THE COURT: Well, there is no other parenting plan.
>
> MR. WATRIDGE: Well, the other order of–
>
> MR. AGEE [counsel for Ms. Wharton]: There was no prior order that provided for support, and that could have been addressed at that time.
>
> THE COURT: There was an order of this Court that there should have been a temporary parenting plan. Since it doesn't exist, I don't know what we go back to.
>
> *                          *                          *
>
> MR. WATRIDGE: The effective date of the child support, will it go back to the date of the other parenting plan when the Court ordered–
>
> THE COURT: You know, I'd say yes, but there is no other parenting plan.
>
> MR. WATRIDGE: I know. But I can't enter it alone. I mean, if I send it to Mr. Agee–
>
> THE COURT: I am not inclined to go into fault. I ordered it [a temporary parenting plan] back in November, and it doesn't exist, so how can I start child support for something that was not in existence.

Although we concede that support should have been set in connection with the entry of temporary parenting plan (which should have been attached or filed concurrent with the February 7, 2006 Order), we must agree with the trial court that, in the absence of a temporary parenting

plan, we have no basis for setting retroactive support. Consequently, we cannot conclude that the trial court erred in setting child support effective as of the date of the August 9, 2005 hearing.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed one-half to the Appellant, Alena Wharton, and her surety, and one-half to the Appellee, Robert Wharton.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.